### A. N. JORDAN v. THE STATE.

No. 1534. Decided January 31, 1912.

**1.—Passing Forged Instrument—Continuance—Want of Diligence.**

Where defendant relied on witness' promise to attend court and had no processes issued, there was no diligence; besides, the witness proved to be dead when motion for new trial was made.

**2.—Same—Continuance—General Reputation.**

Where the State did not attack the general reputation for honesty of the defendant, there was no error in overruling an application for continuance on this ground.

**3.—Same—Continuance—Declarations of Defendant.**

Where defendant admitted that he had signed the alleged forged instrument, there was no error in overruling a motion for continuance for absent testimony relating thereto; besides, the diligence was not sufficient.

**4.—Same—Attorney and Client—Privileged Communications.**

Where, upon trial of passing a forged instrument, it appeared that the attorney of defendant got possession of the alleged forged note, and was called upon as a witness by the State as to the whereabouts of same, and testified that his client had no connection with this transaction, the matter did not come within the scope of privileged communications between client and attorney.

**5.—Same—Evidence—Alleged Forged Instrument.**

Where, upon trial of passing a forged instrument, the instrument introduced was the promissory note described in the indictment, there was no error.

**6.—Same—Evidence—Condoning Crime.**

Upon trial of passing a forged instrument, there was no error in refusing to admit testimony that the alleged holder of the note, in consideration of payment of same, had agreed to mark the same settled, and turn it over to defendant, depriving the State of the evidence of the note, etc.

Appeal from the District Court of Falls. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of passing a forged instrument; penalty, two years imprisonment in the penitentiary.

*Nat Llewellyn,* for appellant.—On question of forcing defendant's attorney to testify: Hernandez v. State, 18 Texas Crim. App., 134; Holden v. State, 71 S. W. Rep., 600; McIntosh v. Moore, 53 id., 611.

On question of introducing note in evidence: Thompson v. State, 38 S. W. Rep., 1151; Robinson v. State, 43 id., 526.

*C. E. Lane,* Assistant Attorney-General, and *Frank Ollorf,* County Attorney, for the State.—Where, for the purpose of laying a predicate for the introduction of secondary evidence, the attorney for accused is required to testify that the primary or best evidence was delivered into his the attorney's possession, if error, the same is cured and harmless if the original or primary evidence is subsequently introduced in evidence as in this case: Johnson v. State, 20 S. W. Rep., 985.

A paper delivered to an attorney by a third person, not client's agent, is not privileged, although it relates to client's business: 10 Enc. of Ev., pp. 269-278; 2 Am. & Eng. Enc. of Law, p. 73.

HARPER, Judge.—Appellant was prosecuted under an indictment charging him with knowingly and fraudently passing as true to I. N. Conyers a forged instrument. When tried he was adjudged guilty and his punishment assessed at two years imprisonment in the penitentiary.

The court overruled appellant's application for a continuance, and this is assigned as error. As to the witness Z. I. Harlan no process was ever issued, appellant relying on his promise to attend court. When the case was called Mr. Harlan was sick and shortly thereafter died. The court at the time of overruling the motion for a new trial was aware that Mr. Harlan was dead. Inasmuch as there was a total lack of diligence there was no error in overruling the motion as to this witness, and especially does it not make even an equitable showing at the date of the overruling of the motion for a new trial, as the witness at that time had passed to that bourne from which no traveler ever returns. As to the witnesses by whom he stated he expected to prove his general reputation, it presents no ground for continuance. The fact that his reputation, prior to this transaction, was that of an honest, straight forward man was amply proven by witnesses in attendance on court, the State introducing no evidence to the contrary. As to the witness Burnes, the indictment in this case was returned in January, 1911, the subpoena was not issued until July 4, when the case was set for trial on July 17. The subpoena had never been served, the officer stating that the witness was not in Bowie County. The diligence is not sufficient as stated in the application, and in addition thereto, defendant was convicted of passing a forged instrument, the witness Stalworth testifying not only that he did not sign it, but that appellant admitted to him he had signed his, Stalworth's, name to the note, and stated to others that Stalworth had not signed the note. Under these circumstances, the court did not err in overruling the motion and refusing a new trial on this ground.

It appears from the record that a civil suit had been filed on the note. On this trial Geo. C. Riley, W. H. Bolin, W. T. Wiggins, P. Adams and H. B. Stalworth all testified they had not signed the note and had authorized no person to sign their names to the note. There was no effort made to prove that either one of them had signed the note, but defendant offered to prove by some of them that if the note had been presented to them they would have signed it at the request of appellant. As they testified they had not signed the note, nor authorized appellant or any other person to sign their names to the note, this would be no defense, and the court did not err in refusing to admit this testimony. Adams and Stalworth testified that appellant asked them and they refused to sign the note in question. About a week before this trial, the attorney of appellant went to Dr. Harlan, who had charge of the notes, paid them off, and possession was delivered to him. He turned them over to his wife, who in turn delivered them to Mr. John Jordan. The attorney testified that the notes were never seen by appellant after he got possession of them and until he delivered them to John Jordan. Appellant objected to his attorney being required to give this testimony on the ground "that all the matters inquired about had come to his knowledge by virtue of his employment as counsel in the case." The witness was not asked nor was he required to testify that appellant had any connection with him paying off the notes or securing possession thereof. On the other hand he excludes the idea that appellant had anything to do with it by volunteering the statement: "I will make a statement further, after having been forced to go into this matter, that the notes were never seen by the defendant after I got hold of them until I parted the possessor of them. They are not now in my possession, nor in the possession of the defendant, that I know of." Inasmuch as the attorney in his testimony makes it clear that he did not get possession of the notes from his client, and by his testimony would exclude the idea that his client was in any way connected with his, the attorney's, possession of the notes, this transaction does not come within the provisions of privileged communications between a client and his attorney. Mr. Underhill says: "He (an attorney) may be compelled to produce forged writings which were given him for the purpose of suppressing evidence." Sec. 177, and authorities there cited. See also Wharton's Crim. Evi., 9th edition, secs. 503 and 504, and notes; 10 Am. & Eng. Ency. of Law, p. 278, note p. and vol. 23, p. 73; Orman v. The State, 22 Texas Crim. App., 616; Everett v. The State, 30 Texas Crim. Rep., 682. Had he received this note from his client, a different question would be presented, but in this case it appears from the evidence his client had no connection with his obtaining possession of the note, or disposition of same, and therefore the matter would not be privileged.

The defendant objected to the introduction of the note alleged to have been passed being introduced in evidence: 1, because it was one

of a series of eleven notes aggregating $2,300, all of which were passed at the same time, and the introduction of one note was introducing but a part of the transaction; 2, because the note on the bank was indorsed "I. N. Conyers, paid $23.70." The court in approving the bill thus qualifies it: "No other note than the one described in the indictment in this case was introduced, or offered for introduction in evidence and there is nothing in the record to show that said note was a part of a transaction in which a note for $2,300 was made, divided into eleven different notes. The note introduced was and is a complete promissory note in itself. The testimony of I. N. Conyers shows that the endorsement on the back thereof was made long after the making and passing said note." As qualified, this bill presents no error, as it appears that the note was described in the indictment just as it was at the time it was passed.

The ground in the motion that "the court erred in refusing to allow the defendant to prove by I. N. Conyers that in consideration of the payment of said notes he agreed to mark said notes settled and turn them over to defendant, thus depriving the State of the notes as evidence, and further that he agreed to execute a petition asking the court to dismiss said cause, because in his (Conyer's) opinion there was no criminal intent," presents no error. This is not a case where the question of intent arises, if as shown by the testimony, appellant passed the note knowing that the parties named had not signed it. Conyers knew nothing and offered to testify to nothing that would show or tend to show that appellant did not know the note was a forgery, and the court did not err in refusing to permit him to testify to an agreement made by him to condone, in so far as he could, the crime, if a crime had been committed. The questions on trial were: Were the names of the parties forged to that instrument; did appellant know that fact, and knowing it, did he pass the note? The testimony of the witnesses all make it clear that the note was a forgery; that appellant passed it, and the witness H. B. Stalworth makes it equally true that appellant knew that fact at the time he passed the note, for the witness says appellant admitted to him that he (appellant) had forged his (Stalworth's) name to the note. The evidence is equally positive that the note was payable to I. N. Conyers and delivered to him in part payment for some ten head of mules, which were delivered by Conyers to him.

There being no reversible error the judgment is affirmed.

*Affirmed.*