Arcadio (Harvey) YSASAGA, Appellant,

v.

The STATE of Texas, Appellee.

No. 42067.

Court of Criminal Appeals of Texas.

May 28, 1969.

Rehearing Denied Sept. 23, 1969.

Richard T. Collard, Friona, R. H. Munsterman, Levelland, for appellant.

Jack Young, Dist. Atty, Mulshoe, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is burglary; the punishment, 6 years.

This is a companion case to Anders v. State, Tex.Cr.App., 445 S.W.2d 167.

All of appellant's grounds of error relate to the contention that the evidence is insufficient to sustain the conviction.

The record reflects that on January 11, 1967, the Tide Products, Inc. warehouse at Clay Corners in Parmer County was burglarized and 48 cases and 11 quarts of Treflan bearing Lot No. 2113 were taken at the time. Treflan, a pre-emergence selective herbicide that will kill weeds but not cotton, retailed in the area at $102.00 a case.

There was no witness to the burglary and no evidence was offered to show that appellant was in the vicinity at the time or was ever in Parmer County.

This then is a circumstantial evidence case where the State apparently relies upon the rule that unexplained possession of recently stolen property is sufficient to sustain a conviction for theft of such property, and for the burglary of the house out of which the property was stolen. See Adame v. State, Tex.Cr.App., 372 S.W.2d 545; Sharp v. State, Tex.Cr.App., 421 S.W.2d 663; 4 Branch's Ann.P.C., 2d ed., Sec. 2537, p. 866.

Buckman and Faulkner, Lubbock County farmers, who knew that Treflan had been stolen in that county learned from "a Spanish boy" who was employed by Faulkner that he could buy Treflan for $75.00 a case. Buckman and Faulkner then made plans to make a purchase "for the purpose of trying to locate where this stolen Treflan was coming from" believing that a Lubbock Treflan representative would reimburse them.

On the night after the alleged burglary in Parmer County Buckman and Faulkner and the "Spanish boy" drove in the "Spanish boy's" vehicle to the Chevrolet garage in Levelland where they saw two men in a late model red and white Chevrolet pickup.

After the "Spanish boy" had returned from the pickup they followed the pickup out of Levelland and down a dirt road. After a while the "Spanish boy" pulled up in a side road and stopped. Some 10 to 20 minutes later the pickup returned and the "Spanish boy" took the money from Faulkner to the men in the pickup.

After the counting of the money and a conversation in which one of the two men in the pickup spoke "good Spanish" the "Spanish boy" returned to where Buckman and Faulkner were and they then transferred ten cases of Treflan from the pickup to the "Spanish boy's" vehicle. Back at Faulkner's house they discovered Lot Number L–2113 on such cases.

Neither Buckman nor Faulkner was able to identify the two men in the pickup but did obtain the license number of the pickup which was shown to have been registered in Eastland County to the appellant. The "Spanish boy" was not called as a witness nor was his absence accounted for.

There was other evidence offered to show that the appellant and Anders had been seen together at or near the Levelland Chevrolet garage earlier mentioned from three to six times on various occasions.

Appellant was shown to be in the "habit of loaning" his pickup to other people, to his daughter, Gloria DeLeon, to visit her in-laws overnight, and to his son, Arcadio, Jr., an ex-convict. Appellant's daughter related that her father was known as Harvey and Texas Ranger Renfro testified that appellant was the only Harvey Ysasaga with whom he was acquainted in the area.

The only other Treflan traceable to the burglary in question was ten cases sold by Joe Pat Anders alone to Ruben Brock, Jr., a Lamb County farmer on the night of January 17, 1967. This was established by Brock's testimony alone. This Treflan found its way into farmer Neil Wood's hands and was shown to bear Lot No. L–2113 when located on March 16, 1967.

The 40 cases of Treflan delivered to Brock on January 28, 1967, by Anders and "a Spanish guy" called "Harvey" in a late model red and white Chevrolet pickup were not shown to be Treflan taken in the alleged burglary. Further, Brock was unable to identify appellant as the "Spanish guy" with Anders at the time even though he was with them some 20 to 25 minutes on the occasion in question. Two days later when Brock paid for the 40 cases and ordered 13 more cases Anders was alone as he was when he delivered the 13 additional cases to Brock. Altogether Brock received 63 cases of Treflan.

In Adame v. State, supra, and Sharp v. State, supra, which involved the rule apparently relied upon by the State, the defendant was clearly identified as the person in possession of property clearly identified as coming from the alleged burglary and refused or failed to make an explanation when approached by the officers. Such is not the case at bar.

No witness placed either the appellant or Anders near the burglarized warehouse at any time, and neither were identified as the two men in the pickup when the sale was made to Faulkner and Buckman, and the Treflan delivered to Brock on January 28,

1967, was not shown to be property taken in the alleged burglary.[1]

 Brock denied any knowledge of the burglary, but in view of his admission that he "figured" the Treflan was stolen and his acts thereafter in aiding the sellers to dispose of it at a profit renders him an accomplice witness as a matter of law and the jury should have been so instructed,[2] rather than having submitted the matter as a fact issue to the jury. Gonzales v. State, Tex.Cr.App., 441 S.W.2d 539; Smith v. State, 140 Tex.Cr.R. 301, 144 S.W.2d 894; Davidson v. State, 84 Tex.Cr.R. 433, 208 S.W. 664; Cummings v. State, 87 Tex.Cr.R. 154, 219 S.W. 1104; Chandler v. State, 89 Tex.Cr.R. 302, 231 S.W. 107; Newsom v. State, 143 Tex.Cr.R. 583, 159 S.W.2d 883; Jackson v. State, Tex.Cr.App., 388 S.W.2d 935. See Article 38.14, Vernon's Ann. C.C.P., n. 17.

Therefore Brock's testimony being that of an accomplice witness requires corroboration. Article 38.14, supra. Without Brock's testimony the evidence is insufficient to show that either the appellant or Joe Pat Anders was in possession of Treflan recently stolen from the burglarized warehouse.

The State further, however, relies upon evidence of flight. The Parmer County Sheriff was unable to locate appellant in Lubbock after March 28, 1967, when this indictment was returned, and the appellant was later found in the State of Idaho.

 Though flight of an accused is not ground for presuming his guilt, it is still a circumstance from which an inference of guilt may be drawn. 23 Tex.Jur.2d, Evidence, Sec. 102, pp. 139, 140; Kemp v. State, 96 Tex.Cr.R. 152, 256 S.W. 264; Moore v. State, 122 Tex.Cr.R. 257, 54 S.W. 2d 115. Presence, however, in the vicinity of a crime and flight are not alone sufficient to sustain a conviction. Cawley v. State, 166 Tex.Cr.R. 37, 310 S.W.2d 340, cert. den. 361 U.S. 920, 80 S.Ct. 266, 4 L.Ed.2d 188. Where evidence of flight has been received the accused may explain his actions. Chastain v. State, 97 Tex.Cr.R. 182, 260 S.W. 172.

The record shows that appellant, when found in Idaho, was working under his own name. He was not shown to have left Levelland or Lubbock until some time in March, 1967, some two months after the alleged offense. There was no showing that he left only after he learned of an indictment, a warrant of arrest or investigation. His daughter related he left because he was afraid of the Castillo family and their threats.[3]

 In determining whether circumstantial evidence is sufficient to support a conviction each case must necessarily be tested by its own facts and viewed in the light most favorable to the State.

 Ordinarily the test on appeal is whether there was evidence from which the jury (advised of the restrictions which the law places upon them in condemning one on circumstantial evidence) might reasonably conclude that every reasonable hypothesis other than guilt was excluded.

---

1. Each of the farmers to whom Brock sold the remaining Treflan testified and no one identified the same by lot number or otherwise connected such Treflan with the alleged burglary or established its source.

2. Attention is called to the fact that where the evidence of an accomplice falls short of making a complete case against the accused, i.e., where the burglary and theft have been accomplished before the appellant-witness comes into the picture,

as in the case at bar, the charge set forth in Oates v. State, 67 Tex.Cr.R. 488, 149 S.W. 1196, with the exception of the word "alone" should be given. See Smith v. State, supra; Quinn v. State, 136 Tex.Cr.R. 131, 123 S.W.2d 890; Anderson v. State, 95 Tex.Cr.R. 346, 254 S.W. 986.

3. The record shows appellant had been tried for the murder of one of the Castillos.

"In criminal cases, a judgment of conviction, to be sustained on appeal, must be supported by evidence that produces a moral certainty of the guilt of the accused to the exclusion of every reasonable doubt. The evidence will be insufficient to sustain the conviction where, although not leaving the accused free from suspicion of guilt, it still fails to show his guilt to a moral certainty, so as to exclude all reasonable doubt.

"In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The Court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged." 24 Tex.Jur.2d Evidence, Sec. 742, p. 422.

 As reluctant as we are to set aside a jury verdict, we have after long and careful consideration concluded that the rule discussed in 24 Tex.Jur.2d Evidence, Sec. 745, p. 427, is dispositive of the case before us.

The "Spanish boy" who was an employee of Faulkner and knew where Treflan could be purchased under the market value and who acted as go between for the sale near Levelland was surely in a position to identify both men or to shed additional light on the facts. As earlier noted, he was not, however, called as a witness nor was his absence accounted for.

In 24 Tex.Jur.2d, Evidence, Sec. 745, p. 427, it is written:

"Where the circumstantial evidence relied on by the prosecution is obviously weak, and where the record on appeal affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction."

See also Hollingsworth v. State, Tex.Cr. App., 419 S.W.2d 854; King v. State, Tex. Cr.App., 396 S.W.2d 409; Ramirez v. State, 163 Tex.Cr.R. 109, 289 S.W.2d 251.

For the reasons stated, the judgment is reversed and the cause is remanded.

MORRISON, Judge (concurring).

While I agree that the evidence is insufficient to support the conviction, I do not agree that Brock was an accomplice witness. See Street v. State, 39 Tex.Cr. R. 134, 45 S.W. 577 and "The Law of Principals, Accomplices and Accessories" under the Texas Statute, Volume 1, V.A.P.C., at XXII.

I concur in the reversal of this conviction.